**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DORA KING, et al., | ) |
| Plaintiffs, | ) |
|  | ) Case No. 21-cv-991 (RMM) |
| v. | ) |
| VOYAGER 888, LLC, et al., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dora King, Sydney Jacobs, Momo Johnson, Unique Butler, and Jada Morales (collectively "Plaintiffs"), proceeding "individually and on behalf of other similarly situated current and former exotic dancers," filed a putative class and collective action complaint against Defendants Voyager 888, LLC, d/b/a Assets Gentlemen's Club ("Assets"), Jeffrey Schaeffer ("Mr. Schaeffer"), and Saxton-Gabrielle Miller ("Ms. Miller") (collectively "Defendants") for various wage claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FLSA") and the D.C. Minimum Wage Revision Act, D.C. Code §§ 32-1001 *et seq.*, ("DCMWA").[1] *See* Compl. ¶ 1, ECF No. 1. Plaintiffs contend that Defendants misclassified them as independent contractors and failed to pay them a minimum wage for their work as exotic dancers at Assets.

Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members is currently pending before the Court. The motion requests that the Court conditionally certify a class of exotic dancers who performed at Assets and issue an order establishing procedures for

---

[1] Plaintiffs' complaint also includes claims under the D.C. Wage Payment and Collection Act ("DCWPA") and the D.C. Accrued Safe and Sick Leave Act ("ASSLA"). *See* Compl. ¶ 1. This opinion does not address those claims.

1

giving potential opt-in plaintiffs notice of the lawsuit.  Defendants oppose this Motion.  Having reviewed the briefs,[2] relevant legal authorities, and the record, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

## BACKGROUND

Plaintiffs worked as exotic dancers at the Assets Club, a gentlemen's club in the District of Columbia, between October 2019 and March 2020.  *See* Compl. ¶¶ 4, 13–14.  They allege that the club's owners, Mr. Schaeffer and Ms. Miller, had complete control over the employment of all exotic dancers at the Club and were employers for the purposes of relevant wage laws.  *See id.* ¶¶ 1, 5–8.  Plaintiffs allege that they routinely worked twenty-five to forty hours per week, and typically four to six shifts per week.  *See id.* ¶¶ 17–19.  Defendants did not pay the Plaintiffs or other exotic dancers during their tenures at Assets.  *See id.* ¶ 21; *see also* Opp'n at 15 (agreeing that "Plaintiffs were never paid by Voyager d/b/a/ Assets" and providing explanation).  Plaintiffs contend that Defendants violated the FLSA by misclassifying them as independent contractors and failing to pay them the legally required minimum wage.  *See id.* ¶ 22.

To redress that alleged violation, Plaintiffs filed a Class and Collective Action Complaint against Defendants seeking "unpaid wages, back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all related penalties and damages under" the FLSA, DCWPA, DCMWA, and the ASSLA.  Compl. ¶¶ 1, 102–106.  Plaintiffs now seek conditional certification of a collective action class consisting of "[a]ll current and former exotic dancers who work or

---

[2] The following briefs and documents are relevant for this Opinion: Compl.; Mot. for Conditional Certification, ECF No. 5; Defs.' Opp'n to Pls.' Mot. for Conditional Certification ("Opp'n"), ECF No. 15; Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Conditional Certification ("Reply"), ECF No. 17.  Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is asterisked (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

worked for Defendants as exotic dancers at Defendants' Assets Gentlemen's Club during the statutory recovery period, April 2018[3] through the present." Mot. at *10. Plaintiffs have submitted nearly identical declarations in which they allege, *inter alia*, that (1) they were "employees" under the FLSA and DC wage laws, (2) they were misclassified by Defendants as independent contractors, and (3) Defendants did not pay them wages for hours worked each week as exotic dancers. *See* Sworn Decl. of Dora King ("King Decl.") ¶ 16, ECF No. 5-2; Sworn Decl. of Jada Morales ("Morales Decl.") ¶ 16, ECF No. 5-3; Sworn Decl. of Sydney Jacobs ("Jacobs Decl.") ¶ 16, ECF No. 5-4; Sworn Decl. of Momo Johnson ("Johnson Decl.") ¶ 16, ECF No. 5-5; Sworn Decl. of Unique Butler ("Butler Decl.") ¶ 16, ECF No. 5-6.[4] Keonda King and Tiana Holmes have opted into this action as plaintiffs by written consent pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 26, 34; 29 U.S.C. § 216(b) (noting that employees may become party plaintiffs if they provide "consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *see also Dew v. Mindfinders, Inc.*, No. 20-cv-2930, 2021 WL 4797551, at *1 (D.D.C. Oct. 14, 2021) (noting that a plaintiff was added as an opt-in plaintiff upon filing a consent form).

## LEGAL STANDARD

The FLSA permits employees who raise claims for unpaid minimum wages to bring a collective action—a suit "[o]n behalf of [the employees] and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions are "fundamentally different" from class actions and so are not subject to the requirements of Federal Rule of Civil Procedure 23. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013); *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 169

---

[3] Defendants contend that "Assets opened as a nightclub in October 2019," Opp'n at 19, and "did not exist in April 2018." *Id.* at 7.

[4] The Court refers to the declarations collectively as "Pls.' Decls."

(D.D.C. 2014).  Plaintiffs who wish to bring such an action need only satisfy two basic requirements: (1) the proposed plaintiffs and class members must be "similarly situated"; and (2) class members must affirmatively opt into the lawsuit.  *See* 29 U.S.C. § 216(b); *Harris v. Medical Transp. Mgmt., Inc.*, No. 17-cv-1371, 2021 WL 3472381, at *2 (D.D.C. Aug. 6, 2021); *Castillo v. P & R Enters.*, 517 F. Supp. 2d 440, 444 (D.D.C. 2007); *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013).

District courts have "considerable discretion" to decide whether and how collective actions should proceed and to fashion procedures for "joining similarly situated employees in a manner that is both orderly and sensible."  *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *see also Galloway v. Chugach Gov't Servs., Inc.*, 263 F. Supp. 3d 151, 155 (D.D.C. 2017).  Courts typically apply a two-stage inquiry to determine whether a collective action is appropriate.  *See Stephens v. Farmers Restaurant Gp.*, 291 F. Supp. 3d 95, 105 (D.D.C. 2018); *Dinkel*, 880 F. Supp. 2d at 52.  At the first stage, courts determine whether and how to facilitate notice of the action to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs.  *See Harris*, 2021 WL 3472381, at *2; *Dinkel*, 880 F. Supp. 2d at 52. *See generally also Hoffman-La Roche Inc.*, 493 U.S. at 169–71 (noting that the FLSA allows courts, "in appropriate cases," to "facilitat[e] notice to potential plaintiffs").  If the Court concludes that the named plaintiffs and potential opt-in plaintiffs are similarly situated, it can conditionally certify the lawsuit as a collective action, "facilitate notice of the collective action to [the] potential plaintiffs," *Blount*, 945 F. Supp. 2d at 92, and allow the lawsuit to proceed "throughout discovery as a representative action for those [plaintiffs] who opt-in."  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008); *see also Dinkel*, 880 F. Supp. 2d at 52; *Harris,* 2021 WL 3472381, *2.

The second stage, which occurs after the close of discovery, allows defendants to move to decertify the conditional class if the factual record does not show that plaintiffs are in fact similarly situated to the opt-in members. *See Harris*, 2021 WL 3472381, at *3; *Castillo*, 517 F. Supp. 2d at 445.

D.C.'s Minimum Wage Revision Act allows employees to bring collective actions "consistent with the collective action procedures of the Fair Labor Standards Act." D.C. Code § 32-1308(a)(1)(C); *see also Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 199 (D.D.C. 2018). Plaintiffs here assume that the same legal standard governs the conditional certification analysis under both statutes, and Defendants do not contend otherwise. Accordingly, the Court assumes for purposes of this motion that the two-stage inquiry that governs FLSA claims also governs Plaintiffs' request to certify a collective action class under the DCMWA. *See Castro v. Tierno Care Home Health Agency, Inc.*, No. 21-cv-0282, 2022 WL 1433650, at *2 (D.D.C. Apr. 5, 2022) (citation omitted); *Guzman v. GF, Inc.*, No. 19-cv-2338, 2021 WL 2439277, at *2 (D.D.C. June 14, 2021); *Guevara v. Spartan Enterprises, LLC*, No. 20-cv-1383, 2020 WL 6870007, at *2 (Nov. 23, 2020); *Camara*, 340 F. Supp. 3d at 105–06.

## DISCUSSION

### I. Plaintiffs' Complaint and Declarations Adequately Demonstrate That Similarly Situated Plaintiffs May Exist and That A Class Should Be Conditionally Certified.

Plaintiffs can satisfy the "similarly situated" element of the conditional certification inquiry by showing that they and the potential plaintiffs were injured due to a common policy or practice of Defendants. *See Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 55 (D.D.C. 2018); *see also Ayala*, 12 F. Supp. 3d at 170. As this stage of litigation, Plaintiffs need only make a "modest factual showing" that they are similarly situated to the potential opt-in plaintiffs. *Chase v. AIMCO Props. L.P.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005). Plaintiffs do

5

not need extensive evidence at this stage and may rely on their pleadings and affidavits. *See Camara*, 340 F. Supp. 3d at 55 (citing *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 6 (D.D.C. 2010)).  The bar "is not high" and there need only be "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected a plaintiff and the manner in which it affected other employees." *Ayala*, 12 F. Supp. 3d at 170 (citation, internal quotation, and alteration omitted).

Plaintiffs' complaint and declarations easily make the modest factual showing necessary to conditionally certify a class of exotic dancers.  The Plaintiffs allege that they were exotic dancers at Assets, worked between twenty-five to forty hours per week, and were not paid wages in violation of the FLSA and the DCMWA, because Defendants misclassified them as independent contractors.  *See* Compl. ¶¶ 5–8, 17–21.  Similarly, Plaintiffs aver that they and other exotic dancers were misclassified throughout their tenures at Assets, and that consequently neither "Assets [n]or any of its owners or manager[s] ever pa[id] [them] any wages for hours that [they] worked each week." Pls.' Decls. ¶¶ 4–6.  This allegedly consistent misclassification of exotic dancers who performed at Assets, and Defendants' ensuing failure to pay the dancers any wages, are policies that Plaintiffs allege applied equally to all dancers.  Thus, it follows that other dancers who performed at Assets during the relevant time period may be similarly situated to Plaintiffs.  Indeed, several courts have certified collective actions for unpaid wage claims based on similar allegations that a club misclassified exotic dancers as independent contractors. *See, e.g.*, *Eley v. Stadium Group*, No. 14-cv-1594, 2015 WL 5611331, at *2 (D.D.C. Sept. 22, 2015) (conditionally certifying class of current and former nightclub dancers who claim they were misclassified as independent contractors); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781–82 (C.D. Ill. 2015) (conditionally certifying class of exotic dancers who claimed a club

misclassified them as independent contractors and collecting supporting cases); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) ("Courts typically authorize dissemination of . . . notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying.'").

Defendants unpersuasively argue that Plaintiffs have not identified a common policy that affects Plaintiffs' claims, citing alleged differences in the dancers' schedules and hours. *See* Opp'n at 9–12. Even assuming that the dancers worked at and for varying hours and that they had varying amounts of "idle time," *id.* at 12, their claims are based on Defendants' common policy of deeming dancers at Assets independent contractors who are not entitled to wages. The purported differences that Defendants emphasize do not preclude a finding that the dancers are similarly situated.

Defendants' characterization of the Plaintiffs' declarations as inadequate also misses the mark. Defendants fault the declarations for lacking proof of a generally applicable policy; time sheets or other factual evidence corroborating the hours Plaintiffs say they worked; and any assertion that Plaintiffs have personal knowledge of other dancers' experiences. *See* Opp'n at 9, 10, 19. However, that level of proof is not necessary at this stage of proceedings. "Instead, at this juncture, it is sufficient that the court can reasonably infer based on pleadings and affidavits that that the failure to pay [minimum wage] is sufficiently widespread to justify preliminary certification." *Harris*, 317 F. Supp. 3d at 425. This case is not like *French v. Louisiana Cleaning Systems*, No. 16-cv-277, 2016 WL 3275302 (E.D. La. June 15, 2016), which Defendants point to as requiring "'substantial allegations that potential members were together the victims of a single decision, policy or plan.'" Opp'n at 20 (citing *French*, 2016 WL 3275302, at *4) (original emphasis omitted). *French* is distinguishable because the declarations

7

submitted there alleged that the plaintiff and a potential collective class plaintiff were employees of a single company, the defendant company disputed that it had ever hired the second individual, and the record contained "no independent indica" that the second individual had any affiliation with the defendant company. *See French*, 2016 WL 3275302, at *4. The affidavits therefore did not support a finding that the plaintiff and the second individual both worked at the defendant company and were both misclassified. *See id*. Here, Plaintiffs clearly allege that they each worked at Assets, and there is nothing in the record that suggests that other exotic dancers at Assets were classified as employees and paid at least a minimum wage. Indeed, Defendants suggest that all of the exotic dancers who performed at Assets were independent contractors, and they do not claim to have paid any of them wages. *See* Opp'n at 7–8. Consequently, Plaintiffs' declarations adequately support this motion for conditional certification. *See, e.g.*, *Eley*, 2015 WL 5611331, at *2; *Woods*, 140 F. Supp. 3d at 781–82.

Defendants also contend that Plaintiffs will be unable to prove that they and other dancers are employees instead of independent contractors, and that the factual analysis necessary to evaluate that issue will vary between dancers. *See* Opp'n at 10–11. Defendants' assertion that plaintiffs must make a threshold evidentiary showing that they are employees at this stage of litigation is incorrect. When deciding whether to conditionally certify a class for a collective action, the Court should "refrain from resolving factual disputes and deciding matters going to the merits." *Ayala*, 12 F. Supp. 3d at 172 (quoting *Dinkel*, 880 F. Supp. 2d at 53). Even if the facts establishing each dancer's employment status vary, that does not change the fact that they all allege that a common policy of classifying them as independent contractors who are ineligible for wages violated the FLSA and DCMWA.

The remainder of Defendants' arguments against conditional certification mistakenly focus on Federal Civil Rule 23's requirements for class certification. *See, e.g.*, Opp'n at 8 ("Plaintiffs bear the burden of proving, by a preponderance of the evidence, that each requirement of Rule 23 is met."); *see also id.* at 8–10, 12–16. Those requirements are irrelevant because a different, lower standard governs this motion for conditional certification of a collective action class. *See Ayala*, 12 F. Supp. 3d at 169; *Genesis Healthcare Corp.*, 569 U.S. at 74.

For these reasons, Plaintiffs have demonstrated that other current and former dancers at Assets are likely similarly situated to Plaintiffs insofar as they were subjected to a policy of being classified as independent contractors that may have deprived them of wages. However, the Court rejects Plaintiffs' request to define that class to date back to April 2018. Defendants assert that Assets opened in October 2019, and Plaintiffs did not dispute that factual assertion in their reply memorandum. *See* Opp'n at 7, 19. None of the Plaintiffs claim in their declarations to have worked at Assets before October 2019. Accordingly, the Court will conditionally certify a class of exotic dancers who have worked or are currently working at Assets during the period of October 2019 to the present. If discovery indicates that Assets opened before October 2019, Plaintiffs may ask the Court to expand the scope of this conditionally certified collective class.

**II.     Plaintiffs May Facilitate Limited Notice to Putative Class Members.**

Plaintiffs also ask the Court to issue an Order establishing procedures for giving potential class members notice of this collective action, including requiring Defendants to disclose various forms of contact information for current and former dancers at Assets. *See* Mot. at *10. Defendants oppose almost every requested disclosure. *See* Opp'n at 17–19.

The Supreme Court has recognized the importance of providing "accurate and timely notice" to potential collective class members, as it allows them to "make informed decisions about whether to participate." *Hoffman-La Roche Inc.*, 493 U.S. at 170.  For the reasons below, Plaintiffs may disseminate the proposed Consent Form and Notice to potential class members via limited telephone and social media channels.  To facilitate that process, the Court will further order Defendants to produce contact information for Plaintiffs and potential class members.

### a. *Contents and Means of Transmitting the Consent Form and Notice to Potential Class Members*

First, Plaintiffs seek approval of a proposed Consent Form and a Notice to Potential Class Members ("Notice").  *See* Mot. at *10; Consent Form, ECF No. 5-7; Notice, ECF No. 5-8.  Plaintiffs also "seek a sixty (60) day opt-in period, measured from the date notice is issued to potential opt-in plaintiffs."  Mot. at *10.  Defendants do not object to either document or the proposed opt-in period, and this Court may treat this failure to object as a concession.  *See Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) (collecting cases).  The Court approves the Consent Form, the Notice, and the opt-in period, except for the forms' definition of the class to include workers from April 2018 to the present.  Plaintiffs shall modify the Consent Form and Notice to reflect the narrower period (October 2019 to the present) approved in this Memorandum Opinion and Order.

In addition, Plaintiffs "request that the Court allow the proposed Notice and Consent Forms to be mailed, texted, and emailed to the class members."  Mot. at *10.  To the extent that Plaintiffs know the email and home addresses of potential plaintiffs, whether independently or through information obtained from Defendants, Plaintiffs may notify potential class members by email or mail.  Plaintiffs and their counsel may also send one initial text about the lawsuit and

the Notice and Consent Forms to potential plaintiffs, as that means of communication has been approved by other courts in this circuit. *See, e.g.*, *Eley*, 2015 WL 5611331, at *3.

### b. *Disclosure of Names, Physical Addresses, Email Addresses, Telephone Numbers, and Social Media Accounts*

Second, to facilitate the distribution of the approved Notice and Consent Forms, Plaintiffs seek an order requiring Defendants to disclose to Plaintiffs within ten days the "names, last known addresses, email addresses (business and home), and home and cellular telephone numbers" for potential opt-in plaintiffs. Mot. at *10. Plaintiffs also request "the names and URLS" for potential opt-in plaintiffs' "personal Facebook, Instagram, Twitter, WhatsApp, WeChat, SnapChat, and TikTok pages known to Defendants." Reply at 11.

Defendants do not object to the disclosure of potential plaintiffs' names, and the Court will treat this failure to object as a concession. *See Stephenson* 223 F. Supp. 2d at 121. Courts that have conditionally certified a collective action often order defendants to produce names to facilitate the notification of potential class members. *See, e.g.*, *Blount*, 945 F. Supp. 2d at 97. Therefore, the Court ORDERS that Defendants disclose the name of any exotic dancer who has worked at Assets since October 2019.

Defendants do not *oppose* disclosing potential plaintiffs' email and last known mailing addresses, but suggest that they lack the means to do so. They state they "do not keep email addresses for the dancers," and that they "also do not keep mailing addresses for the dancers as they are not employees, and they do not send them anything in the mail." Opp'n at 19. Plaintiffs reply that "[i]t is simply implausible that none of the employees of Defendants' club would have any of the contact information for any of the exotic dancers." Reply at 10 n.5.

Courts in this district have approved the disclosure of both home addresses and email addresses in similar FLSA cases. *See, e.g.*, *Camara*, 340 F. Supp. 3d at 61 (approving

production of email addresses); *Galloway*, 263 F. Supp. 3d at 159 (home addresses); *Eley*, 2015 WL 5611331, at *3 (home and email addresses); *Blount*, 945 F. Supp. 2d at 97 (home addresses). The Court shares Plaintiffs' skepticism that Defendants lack *any* of this contact information for *any* exotic dancers who worked at Assets, but cannot require Defendants to produce information not in Defendants' possession. Thus, the Court ORDERS that Defendants shall produce all known email and home addresses of any exotic dancer who has worked at Assets since October 2019.

Defendants' most strenuous objections relate to disclosing telephone numbers. *See* Opp'n at 17. Specifically, Defendants argue that disclosing telephone numbers would violate individuals' privacy rights, and that Plaintiffs have not shown a "special need" to receive the information. Courts have reached varying conclusions regarding the production of telephone numbers in this context; some have cited privacy concerns and declined to order their disclosure, whereas others have ordered their production and characterized telephone contact as a common means of providing notice. *See Stephens*, 291 F. Supp. 3d at 122 (collecting cases). *Compare also id.* (requiring production of email addresses but not phone numbers) and *Encinas*, 265 F.R.D. at 7 (ordering defendants to "produce only the names and last known addresses of putative class members" as there was no special need for access to phone numbers), *with Ayala*, 12 F. Supp. 3d at 172 (ordering disclosure of phone numbers given absence of any special privacy concerns) and *Eley*, 2015 WL 5611331, at *3 (ordering disclosure of phone numbers and noting that they are commonly disclosed). As Defendants claim that they have neither home nor email addresses for current and former Assets dancers, but do not claim to be similarly ignorant of dancers' phone numbers, denying Plaintiffs access to phone numbers could well deprive them of any means of contacting potential plaintiffs. Further, the Court finds the cases ordering the

disclosure of phone numbers more persuasive than those suggesting that such disclosures would unduly invade employees' privacy or that make disclosure contingent on a showing of a special need. Thus, the Court ORDERS Defendants to disclose the telephone numbers of any exotic dancer who has worked at Assets since October 2019, to the extent that Defendants have this information.

Finally, Plaintiffs request access to potential plaintiffs' various social media accounts. *See* Reply at 11. "Ordering production of social media information . . . is relatively novel, with only a few courts . . . addressing that type of information specifically." *Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (citations omitted). Other courts in this Circuit have not yet considered whether disclosure of potential plaintiffs' social media information is appropriate when facilitating conditional class certification notice. Other jurisdictions have approved bounded access to this information in recent years. *See, e.g.*, *Quiang Lu*, 447 F. Supp. 3d at 97; *Weinstein v. 440 Corp.*, No. 19-cv-105, 2019 WL 5704137, at *13–14 (N.D. Ga. Nov. 4, 2019). Weighing the privacy concerns raised by the Defendants against the lack of contact information available to Plaintiffs at this time, the Court approves limited production of potential plaintiffs' social media account information. The Court therefore ORDERS Defendants to produce Facebook, Instagram, WhatsApp, and Twitter account usernames of any exotic dancer who has worked at Assets since October 2019, to the extent that Defendants possess that information. Plaintiffs and their counsel may send only one initial message with the Notice and Consent Forms via these platforms during the opt-in period.

In sum, to facilitate notice of this lawsuit, Defendants must produce to Plaintiffs the names, email and home addresses, telephone numbers, and Facebook, Instagram, WhatsApp, and Twitter usernames of any exotic dancer who has worked at Assets since October 2019. If

Plaintiffs are "unable to reach one or more potential plaintiffs based on the information that is produced, they may move for a further order requiring defendants to produce additional information about those individuals." *Blount*, 945 F. Supp. 2d at 97.

### c. *Posting the Notice and Consent Forms in Assets' Common Areas*

Plaintiffs also request that the Court "order the posting of the Notice and Consent Forms in common areas of Defendants' Assets Gentlemen's Club for the entire length of the approved opt-in period." Mot. at *11. Defendants do not object to this request, and thus this Court will treat this failure to object as a concession. *See Stephenson*, 223 F. Supp. 2d at 121. Other courts in this circuit have approved posting notice in common areas, *see, e.g.*, *Eley*, 2015 WL 5611331, at *3, and this Court sees no reason to rule otherwise. Thus, the Court ORDERS Defendants to post the Notice and Consent Form in the common areas.

## CONCLUSION

For the above reasons, Plaintiffs' Motion for Conditional Certification for Notice to Potential Plaintiffs is **GRANTED IN PART** and **DENIED IN PART**. The Court ORDERS that within fourteen (14) days of this Memorandum Opinion and Order, Defendants shall produce to Plaintiffs the names, email and home addresses, telephone numbers, and Facebook, Instagram, WhatsApp, and Twitter URLs and usernames of any exotic dancer who has worked at Assets since October 2019. It is further ORDERED that Defendants shall post the modified Notice and Consent Forms in the common areas at Assets for the sixty (60) day opt-in period once notice is issued to the potential opt-in plaintiffs.

Date: August 1, 2022

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE